Under the Workmen's Compensation Law findings by the Industrial Board on issues of fact are conclusive as to those issues, if there is any evidence to sustain them. Maryland Casualty Co.
v. Sanders, 182 Ga. 594 (186 S.E. 693); Bituminous Casualty Corp. v. Wilbanks, 68 Ga. App. 631 (23 S.E.2d 519).
 DECIDED JULY 9, 1947. REHEARING DENIED JULY 14, 1947.
The plaintiff in error filed with the Industrial Board an application for a hearing on a claim, alleging that on or about July 25, 1944, she was employed by Reynolds Corporation, receiving $41.60 per week for a six-day week, the same being 80 cents an hour straight time and $1.20 an hour overtime. She alleged that several weeks before the above date there was a "near accident" on her machine, and from then on she worked in constant fear of this accident again until her nerves gave completely away. The hearing was had in Macon before the single director, Honorable Harry Monroe, on November 6, 1945, the claimant testifying under direct examination on her own behalf substantially as follows: Sometime in 1943 I started to work for Reynolds Corporation, Macon, Georgia, and worked for them for 16 months. Sometime during this 16 months and while I was in the detonator department crimping detonators, one night one of the detonators went off in my face and scared me and affected my eyes. This was in July, 1944. I told my supervisor that an explosion occurred. Immediately the crimper was fixed and I was patted on the shoulder and put back to work. I told my supervisor on this occasion that I was scared. I immediately began to be nervous and my eyes gave me trouble and then I began to cry until I later suffered a *Page 410 
complete collapse. The last three nights I reported for work I was sent to first-aid, and on July 29, 1944, I was given a leave slip or separation notice, stating "very nervous condition, leave requested by first-aid, must bring the certificate when reinstated." I have been unable to work since I left Reynolds Corporation. I have been under the care of Dr. H. B. Cason, Warrenton, and Dr. Hervey Cleckley of Augusta over a period of three months. Dr. Cleckley gave me a total of 24 electrical-shock treatments. I am gradually improving. When the detonator exploded it was in the crimper in the machine which is on the table. After the explosion it was about two or three months before I went to first-aid the first time. I went to first-aid three times; the first two nights I went to first-aid I was examined and the nurse said that I would be all right and I was put back to work. The third night my sister was called from another building and under the direction of the doctor and nurse I was carried home. When the detonator exploded, it exploded in my face. Immediately afterward I became nervous. I don't know whether any of it hit me or not. I had been wearing glasses before this occurrence. I wore them when I was in school. It was for several years. But about four or five months prior to the hearing my glasses had been changed. When this thing exploded in my face I had no physical injury, I believe. At the time I was making around $40 a week. On cross-examination, the witness testified substantially as follows: The explosion occurred in the machine I was working on; I was crimping the top on the detonators. The machine has a steel plate between me and the mechanism. It has a door that comes down over the detonator when you pull the handle to crimp the top. There was a complete steel shield between me and the detonator. It was encased in a box; the front part of it between me and the detonator I was crimping was a steel plate. I don't remember the name of my supervisor, but I told her about it the night of the explosion. My supervisor was a woman. It was not Mrs. Darity or Mrs. Webb, but I do not remember who it was. Nothing from the explosion touched me so far as I know. It made me nervous. The explosion was about as loud as a fire cracker. I told my mother to make this statement: "Sara Shivers collapsed there in the plant, on the job, caused by what she called a near-accident, sometime before. She worked in constant fear and dread *Page 411 
and was found crying on the job, and no note was made of her whole nervous system . . being undermined." When I started to work for Reynolds Corporation in March, 1943, it was in building 107, which is the detonator department. This was the building in which I was working when the detonator exploded in my face. I worked in this building for two or three months after I first went to the plant. Later I worked in building 1068. While I was working on the detonator there were three explosions, all happening the same way, in the same line, and in the same manner. But the last one is the one that scared me; the other two didn't bother me; the last one is the one that blew up in my face. They all happened in the first two or three months after I went to work for this company.
Mrs. Levert D. Shivers, mother of the claimant, testified that, when Sara went to work for the Reynolds Corporation she was a bright, happy, lovable girl, in good shape in every way so far as the mother knew, and that on July 29, 1944, when she quit work she didn't know anything scarcely at all; that the mother arranged medical treatment for her daughter and had spent during several years approximately $1500.
Carry O. Pickard testified for the defendant that he was director of personnel and protection; that reports of accidents are supposed to clear through his office, and no such report came through his office of an accident to the claimant.
Mrs. Louella Darity testified for the defendant that she began work for Reynolds Corporation in 1942 and continued until it closed; that in July, 1944, and several months prior thereto she had been supervisor in building 1068, the fuse department; that three months prior to July 29, 1944, Sara Shivers was employed in this building and department, carrying unloaded parts from one table to another. No explosion ever occurred in this building to anyone. During this time the claimant would become upset and would cry. When asked if she was suffering and if she wanted to change jobs, she would answer in the negative. She never mentioned any explosion having previously occurred to her.
Mrs. B. H. Webb testified for the defendant as follows: From March, 1942, until August, 1945, she worked for Reynolds Corporation. During the latter part of 1943 and until the plant closed, she was supervisor of the detonator department, building *Page 412 
107. The claimant came there the latter part of 1943 and probably the first part of 1944, the same being the witness's approximation. The witness does not recall any "pop-offs" or explosions occurring to the claimant in this department. Frequently "pop-offs" occurred. The witness does not remember whether Sara was in the room or not, but "pop-offs" don't amount to anything. The claimant never reported any accident to her.
L. C. Shell testified for the defendant that he worked for Reynolds Corporation from August, 1942, until September, 1944, in both the fuse and the detonator departments. He was in the detonator department, building 107, about July, 1944. He knew the claimant. He knew of no explosions occurring to her and she reported none to him. He was foreman of the fuse-loading room. On July 29, 1944, he was roaming foreman and signed the separation notice of the claimant.
The testimony or statements of four doctors are in the record. Dr. W. W. Baxley testified for the defendant that the claimant came to him on July 30, 1944, voluntarily, complaining of fainting spells and nervousness; mentioned nothing about an explosion or accident; and that he found no organic trouble, and diagnosed the case as "emotional upset." Dr. Carl Anderson made a statement, which was admitted in evidence, as medical director of Reynolds Corporation. He saw the claimant on several occasions at the plant hospital, the last day being July 28, 1944. She complained to the doctor that an explosion or near-explosion at a previous date had caused her to become nervous. She was indefinite about the date of this explosion. An investigation revealed no explosion or near-explosion at any time. In Dr. Anderson's opinion her nervous condition was due to some emotional disturbance not related to her work. Dr. Hervey Cleckley testified for the claimant in his statement that he saw the claimant in August, 1944, and felt that she was suffering from a serious personality disorder. She expressed delusional ideas. Her emotional reactions were inconsistent and sometimes inappropriate. He felt that her disorder was a schizophrenic psychosis. Being requested to express an opinion as to the cause of this illness, the claimant's mother has spoken to this witness of difficulties and stresses in her work prior to her illness. The witness experienced difficulty in ascribing this disorder to any single or specific cause, *Page 413 
since schizophrenic psychosis is usually a product of cumulative stresses and faulty reactions. If Miss Shivers was subject to any great and unusual hardship in her work, it would be reasonable to believe that this might have been a factor in precipitating the illness. Dr. Hugh B. Cason for the claimant made a statement certifying that he saw claimant on July 31, 1944. She was nervous and emotionally upset. He saw her again on August 1 and 3, 1944. She was not improving, and he referred her to Dr. Hervey Cleckley, University Hospital, Augusta, Georgia. The witness thought that she was suffering from a schizophrenic psychosis. He had seen her previously when she appeared almost normal. It is possible that something relating to her work may have caused this breakdown.
On January 10, 1946, Harry E. Monroe, Director and member of the Industrial Board entered an award finding against the claimant's contentions, and as a matter of fact that the claimant had failed to carry the burden of proving by a preponderance of the evidence that she had suffered an accident arising out of and in the course of her employment. The director further found as a matter of fact that the claimant was suffering with the disease of schizophrenic psychosis, and that the same was not caused naturally and unavoidably as the result of the accident; neither was said disease aggravated by an accident. The director further found that the claimant had failed to give statutory notice within the time prescribed by law that she had suffered an injury.
Being dissatisfied with this award, the claimant appealed to the full board and a hearing was had before such board on January 28, 1946, on the same evidence and record as was before the single director. The full board adopted the findings and award of the single director and affirmed the same in its entirety.
Being dissatisfied with this award, the claimant appealed to the Superior Court of Bibb County, which affirmed the award of the full board. To this judgment the plaintiff excepted.
There is evidence in the record to support the findings of fact by the full board. *Page 414 
Under the Workmen's Compensation Law, findings by the Industrial Board on issues of fact are conclusive as to those issues, if there is any evidence to sustain them. MarylandCasualty Co. v. Sanders, 182 Ga. 594 (supra); BituminousCasualty Corp. v. Wilbanks, 68 Ga. App. 631 (supra).
The judgment of the superior court affirming the award of the Industrial Board is without error.
Judgment affirmed. MacIntyre, P. J., and Gardner, J.,concur.